UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA

v.

ANDREW ASSAD,
PETER BOLOS,
MICHAEL PALSO,
SYNERGY PHARMACY SERVICES INC.,
PRECISION PHARMACY MANAGEMENT LLC,
LARRY EVERETT SMITH,
ALPHA-OMEGA PHARMACY LLC,
GERMAINE PHARMACY INC.,
ERX CONSULTANTS LLC
   dba ZOETIC PHARMACY,
TANITH ENTERPRISES LLC
   dba MEDVEST MANAGEMENT SERVICES,
     and
ULD WHOLESALE GROUP LLC

No. 2:18-CR-140

District Judge Greer
Magistrate Judge Corker

## DEFENDANTS' JOINT MOTION TO STRIKE SURPLUSAGE IN THE INDICTMENT

Pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure Defendants Larry Everett Smith ("Smith"), Tanith Enterprises, LLC dba Medvest Management Services ("Tanith"), ULD Wholesale Group, LLC ("ULD"), Andrew Assad ("Assad"), Peter Bolos ("Bolos"), Michael Palso ("Palso"), Precision Pharmacy Management LLC ("Precision"), Synergy Pharmacy Services Inc. ("Synergy"), Alpha-Omega Pharmacy LLC ("Alpha-Omega"), Germaine Pharmacy Inc. ("Germaine"), and ERX Consultants LLC dba Zoetic Pharmacy ("Zoetic") (collectively, the "Defendants"), respectfully move to strike surplusage in the Indictment. In support, the Defendants state the following:

1

## PRELIMINARY STATEMENT

On October 9, 2018, in a lengthy and complex Indictment, the Government charged Defendants with a multi-faceted scheme to defraud health care benefit programs. *See* Doc. No. 1. More specifically, the Government has charged Defendants with conspiracy to commit health care fraud. The Government has also charged: (a) Assad, Bolos, Palso (collectively the "Synergy Principals" solely for this Motion), Synergy, Smith, and Alpha-Omega with mail fraud, and (b) the Synergy Principals, Synergy, Smith, and Alpha-Omega with introduction of misbranded drugs into interstate commerce with intent to defraud and mislead.

The Government alleges two schemes. The first involves Smith on behalf of three pharmacies that he purportedly controlled – Alpha-Omega, Germaine, and Zoetic – and the Synergy Principals on behalf of two entities that they allegedly controlled – Synergy and Precision – purchasing prescriptions for alleged "inflated average wholesale price[d]" ("Inflated AWP") medications from Scott Roix ("Roix") and HealthRight, LLC ("HealthRight"). *Id*. at ¶¶ 84, 87. The Government alleges that Defendants fraudulently obtained millions through the purported schemes. *Id*. In the second purported scheme, Smith and Tanith paid kickbacks amounting to approximately $3.55 million to HealthRight and caused ULD to pay approximately $1.6 million to Roix for such prescriptions. *Id.* at ¶ 87. The Synergy Principals allegedly paid approximately $31.9 million to HealthRight in kickbacks. *Id*. at ¶ 84.

As noted above, the Indictment labels the medications sold to the pharmacies as being "Inflated AWP Medications" because Smith through ULD and the Synergy Principals allegedly purchased the medications "at prices substantially below the manufacturer-reported average wholesale prices ("AWP"), knowing that the [pharmacy benefit managers] PBMs relied on such

2

manufacturer-reported AWPs in calculating how much to pay pharmacies (each an "Inflated AWP Medication")." *Id*. at ¶ 39. The Government further claims that "[t]he purpose and effect of this was that PBMs frequently paid SYNERGY, the PRECISION pharmacies, ALPHA-OMEGA, GERMAINE, AND ZOETIC amounts equal to or slightly less than the manufacturer-reported AWPs of the Inflated AWP Medications, even though the pharmacies: (a) purchased the Inflated AWP Medications at a small fraction of the publicly-reported AWPs; and (b) never or almost never sold the Inflated AWP Medications at the usual and customary prices they represented to the PBMs, and instead sold slightly altered formulations of the Inflated AWP Medications for a small fraction of the amounts billed for the Inflated AWP Medications, contrary to one or more provider agreements." *Id*. at ¶ 42. As detailed further below, the Government fundamentally misunderstands AWPs and its labeling of the medications purchased by ULD, Synergy Principals, and the pharmacies as "Inflated AWPs" is legally irrelevant and highly prejudicial.

The Indictment also digresses into uncharged bad acts, alleging several times that Defendants "laundered money." *See id.* at ¶¶ 9, 76-77, 88-89. However, the Government did not bring a money laundering charge against the Defendants. As explained below, the Court should strike any reference to laundering money from the Indictment because the allegations are not relevant to the charges brought and are unfairly prejudicial.

Finally, the Indictment often refers to "other persons and entities known to the grand jury", "other conspiring pharmacies", "elsewhere", "among other things", "at least one scheme", and "a variety of schemes" implying that there are additional individuals involved in the conspiracy and/or that the scheme is larger than charged. Such language is irrelevant to the charges brought and is prejudicial because it could lead the jury to believe that there existed a much broader scope of illegal activity than was actually charged. As such, the Court should strike this language.

3

# ARGUMENT

## I. Standard

In general, the purpose of an indictment is to inform the defendant of the charges against him so that he can properly prepare to defend himself. *See Russell v. United States*, 369 U.S. 749, 765-66 (1962); *United States v. Baldinger*, 838 F.2d 176, 181 (6th Cir. 1988). To accomplish this purpose, the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged…." Fed. R. Crim. P. 7(c).

A district court may, within its discretion, strike surplusage from the indictment pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). The Advisory Committee notes to the rule explain that "[t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Such protection is necessary because "[p]rosecutors have been known to insert unnecessary allegations for 'color' or 'background' hoping that these will stimulate the interest of the jurors." *United States v. Brighton Bldg. & Maint. Co.*, 435 F. Supp. 222, 230 (N.D. Ill. 1977) (citation omitted).

Thus, Rule 7(d) "is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *Kemper*, 503 F.2d at 329. The Sixth Circuit has held that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered a surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (citation omitted).

4

## II. The Court Should Strike The Uncharged Allegations That Defendants "Laundered Money" As Irrelevant and Prejudicial.

The Government alleges several times that the Defendants "laundered money", however, the Indictment indisputably does not contain a charge for money laundering against Defendants. For example, in paragraph 9, without any further description, the Government alleges that "LARRY SMITH used ULD…to purchase Inflated AWP Medications… for, and launder money on behalf of, ALPHA-OMEGA, GERMAINE, and ZOETIC, in each case in furtherance of the conspiracy as described herein." Doc. No. 1 at ¶ 9. In paragraph 76, the Government contends that "the SYNERGY PRINCIPALS came up with a variety of schemes to launder money through several persons and companies (including Global Patient Services LLC, Affordable Medication Solutions LLC, and RxSolutions Inc.) to make it appear to the PBMs as though SYNERGY and the PRECISION pharmacies were collecting copays when, in fact, they routinely and systematically failed to do so." *Id*. at ¶ 76. In paragraph 77, the Government alleges that "SMITH, TANITH, and ULD…employed at least one scheme to launder money through a company called AlphaScrip Inc. to make it appear to the PBMs as though ALPHA-OMEGA, GERMAINE, and ZOETIC were collecting copays, when, in fact, they routinely and systematically failed to do so." *Id*. at ¶ 77. In paragraph 88, the Government claims that "[t]he SYNERGY PRINCIPALS laundered and attempted to launder not less than (a) $70,080 through Global Patient Services LLC, from on or about November 17, 2015 through on or about September 8, 2016; (b) $120,670 through Affordable Medication Solutions LLC, from on or about December 5, 2016 through on or about January 5, 2018; and (c) not less than $87,159 through RxSolutions Inc., from on or about December 15, 2015 through on or about Marcy 15, 2018, all for the purpose of deceiving PBMs by making it appear as though SYNERGY and the PRECISION pharmacies were collecting

5

copays when in fact they routinely and systematically failed to do so." *Id*. at ¶ 88. Finally, the Government alleges that "[f]rom on or about March 6, 2017 through on or about January 19, 2018, LARRY SMITH and ULD… laundered not less than $1,184,401 through AlphaScrip Inc. for the purpose of deceiving PBMs by making it appear as though ALPHA-OMEGA, GERMAINE, and ZOETIC were collecting copays when in fact they routinely and systematically failed to do so." *Id*. at ¶ 89.

The crime of money laundering is set forth in 18 U.S.C. §§ 1956-1957. To prove money laundering, the Government must demonstrate that Defendants: (1) used funds that are proceeds of unlawful activity; (2) knew that the funds were proceeds of unlawful activity; and (3) conducted or attempted to conduct a financial transaction, knowing that the transaction was designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds. *Moss*, 9 F.3d at 551.[1] Similarly, 18 U.S.C. § 1957(a) makes it a crime for parties to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 [which] is derived from specified unlawful activity." 18 U.S.C. § 1957(a). The Government must demonstrate that the Defendants (1) engaged in a financial transaction involving the proceeds of unlawful activity; (2) knew the proceeds derived from unlawful activity; and (3) the proceeds exceeded $10,000 in value. *United States v. White*, 492 F.3d 380, 397 (6th Cir. 2007).

---

[1] To make a case for promotional money laundering, the Government must bring forth evidence that Defendants: (1) conducted financial transactions that involved proceeds of unlawful activity; (2) knew property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity. *United States v. McGahee*, 257 F.3d 520, 526 (6th Cir. 2001) (citing *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999)).

6

The Indictment does not charge Defendants pursuant to 18 U.S.C. §§ 1956-1957, so the allegations of "money laundering" are irrelevant. Moreover, money laundering is not relevant to establishing the *prima facie* elements of the charges actually contained in the Indictment. Rather, the uncharged criminal allegations of "money laundering" are unfairly prejudicial because a jury could believe that Defendants engaged in these criminal acts.

Consequently, the Court should strike any reference to Defendants "laundering money" in paragraphs 9, 76-77, and 88-89 of the Indictment as irrelevant and unfairly prejudicial surplusage. *See Kemper*, 503 F.3d at 329 (recognizing that granting of motion to strike surplusage is proper "where the words stricken are not essential to the charge"); *United States v. Hazelwood*, Case No. 1:10 CR 150, 2011 WL 2565294, at *24-25 (N.D. Ohio June 27, 2011) (striking references to drug use in an indictment where defendant was not charged with illegally using controlled substances, making the information irrelevant and prejudicial); *United States v. Marlinga*, No. 04-80372, 2006 WL 2086030, at *15 (E.D. Mich. June 9, 2006) (striking allegations unnecessary to honest services mail fraud charges); *United States v. Salerno*, Case No. 3:10-CR-301, 2011 WL 6141017, at *7 (M.D. Penn Dec. 9, 2011) (striking reference to statute as irrelevant and prejudicial surplusage because the reference implied that the defendant engaged in illegal activity not charged in the indictment and not relevant to the violations alleged).

### III. The Court Should Strike References to "Inflated AWP Medications" Because the Allegations Are Irrelevant and Prejudicial.

The Court should also strike the multiple references throughout the Indictment to "Inflated AWP Medications" as surplusage. *See, e.g.,* Doc. No. 1 at ¶¶ 9, 39-48, 51-58, 60-66, 74-75, 80-87, 94, and 96. The average wholesale price "AWP" for a medication is "based on figures that the drug manufacturer reports to third-party publishers, such as Red Book." *United States v. CSL*
7

*Behring, LLC*, 855 F.3d 935, 938 (8th Cir. 2017) (citation omitted). The AWP cannot be changed or manipulated by the wholesaler or by the pharmacy. Thus, there was no way for Smith, ULD, the Synergy Principals, or the pharmacies to "inflate" the AWP, as implied by the Government.

Smith, through his wholesale pharmaceutical company, ULD, purchased medications from drug manufacturers at a price lower than the manufacturer-set AWP. ULD, in turn, sold those medications to pharmacies for more than it paid, but less than AWP. When the pharmacies submitted a prescription to a PBM for payment, the PBM required that the pharmacy report the manufacturer-set AWP for that medication. The PBM generally did not pay the pharmacy the AWP. Instead, the PBM paid the pharmacy an amount lower than the AWP, so that the PBM could also earn a profit.

The allegations in the Indictment surrounding the "inflated AWP Medications" fail to allege any criminal conduct by the Defendants and, therefore, the Court should strike these allegations as legally irrelevant. Smith, ULD, and the Synergy Principals did not engage in any criminal activity by trying to earn a profit from selling medications purchased from a pharmaceutical manufacturer. Moreover, the pharmacies were generally not paid the full difference between the pharmacies' purchase price and the AWP. The allegations surrounding the "inflated AWP medications" are also highly prejudicial because the Government implies that the Defendants engaged in criminal conduct and that they were greedy. Such allegations will simply be used to inflame and mislead the jury. Consequently, the Court should strike the allegations surrounding "inflated AWP Medications" as surplusage.

## IV. The Court Should Strike Language That Makes the Conspiracy Appear Much Larger Than What Was Charged.

The Government often implores language to make the conspiracy or the scheme appear much larger than what was charged. For example, the Government repeatedly makes vague references to "other persons and entities known to the grand jury" (Doc. No. 1 at ¶¶ 1, 32-33, pp. 14 & 31), "others known to the grand jury" (*id*. at ¶¶ 48, 53, 62, 79, 90), "other persons and pharmacies known to the grand jury" (*id*. at ¶ 37), "others involved in the conspiracy" (*id.* at ¶ 26), "other pharmacies" (*id*. at ¶ 38), "another conspiring pharmacy" (*id.* at ¶¶ 50, 65), "elsewhere" (*id*. at ¶¶ 1, 32, 94, 96, 98, 100 p. 31), "among other things" (*id*. at p. 14), "a variety of schemes" (*id*. at ¶ 76) and "at least one scheme." *Id*. at ¶ 77.

These references should all be stricken because they imply that Defendants were part of a broader scope of illegal activity than that which was charged. *See United States v. Alsugair,* 256 F.Supp.2d 306, 317-318 (D.N.J. 2003) (where indictment specifically referenced two individuals other than defendant who were part of the alleged conspiracy, court struck multiple references to "others" as the term "implies that there are additional individuals who were involved in the scheme, which could prejudice the defendant by leading the jury to believe that there exists a broader scope of illegal activity than is actually charged in the indictment); *United States v. Gatto*, 746 F.Supp. 432, 457 (D.N.J. 1991) (striking the terms "elsewhere" and "others" because "[d]efendants….would be prejudiced by [their] inclusion…in the indictment if the government fails to show involvement of other persons or conduct…outside the District of New Jersey because the terms suggest a broader participation in illegal conduct") *reversed on other grounds*, 924 F.2d 491 (3d Cir. 1991); *United States v. Hubbard*, 474 F.Supp. 64, 82 (D.D.C. 1979) (striking words such as "various," "including but not limited to the following," and "besides the defendants" as

9

irrelevant and prejudicial because "they serve no useful purpose" and "may encourage the jury to draw inferences that the defendants are…involved in [uncharged] activities"). Each of these vague allegations can only serve to "inflame a jury into believing that the alleged crime[s charged in the Indictment] are of greater magnitude than the evidence presents." *Brighton Bldg. & Maintenance Co.*, 435 F. Supp. at 231 n. 14. These allegations should, therefore, be stricken as irrelevant and unduly prejudicial surplusage.

The Defendants have discussed this motion with Assistant United States Attorney, Timothy Harker, who opposes the transfer.

WHEREFORE, the Defendants respectfully request that the Court grant (i) the Motion to Strike Surplusage in the Indictment and (ii) such other relief as this Court deems just and proper.

Dated: February 25, 2019	Respectfully submitted,

/s/ *Gregory W. Kehoe*
Gregory W. Kehoe (FBN 0486140)
kehoeg@gtlaw.com
Danielle S. Kemp (FBN 0474355)
kempd@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
(813) 318-5700
(813) 318-5900 (facsimile)

*Attorneys for Smith, Tanith and ULD*

/s/ *Paul M. Sisco*
Paul M. Sisco (FBN 964484)
psisco@paulsiscolaw.com
**LAW OFFICE OF PAUL M. SISCO**
101 E. Kennedy Blvd., Suite 3920
Tampa, FL 33602
(813) 225-1988

*Attorneys for Andrew Assad*

10

*s/ Todd Foster*
Todd Foster (FBN 0325198)
tfoster@tfosterlaw.com
Richard Rodriguez (FBN 83546)
rrodriguez@tfosterlaw.com
**TODD FOSTER LAW GROUP**
1811 W. Kennedy Blvd.
Tampa, FL 33606
(813) 229-7373

*Attorneys for Peter Bolos*

*/s/ Donald A. Bosch*
Donald A. Bosch (BPR No. 013168)
dbosch@boschlawfirm.com
Ann C. Short (BPR No. 009645)
ashort@boschlawfirm.com
Mitchell D. Eisenberg (BPR No. 035459)
meisenberg@boschlawfirm.com
**THE BOSCH LAW FIRM**
712 South Gay Street
Knoxville, TN 37902
(865) 637-22142

*Attorneys for Peter Bolos*

*/s/ Eddie Suarez*
Eddie Suarez (FBN 752540)
esuarez@suarezlawfirm.com
Rachel May Zysk (FBN 0010657)
rzysk@suarezlawfirm.com
**THE SUAREZ LAW FIRM**
1011 W. Cleveland street
Tampa, FL 33606
(813) 229-0040

*Attorneys for Michael Palso*

11

/s/ M.D. Purcell
M.D. Purcell, Jr. (FBN 831591)
chip@mdpurcell.com
pam@mdpurcell.com
**LAW OFFICE OF M.D. PURCELL, JR.**
1110 North Florida Avenue
Tampa, FL  33602
(813) 960-7887

*Attorneys for Synergy Pharmacy Services, Inc. and Precision Pharmacy Management, LLC*
/s/ Dale R. Sisco
Dale R. Sisco (*Pro Hac Vice*)
dsisco@sisco-law.com
Dominic Isgro (*Pro Hac Vice*)
disgro@sisco-law.com
1110 N. Florida Avenue
Tampa, Florida 33602
(813) 224-0555

*Attorneys for Alpha-Omega Pharmacy LLC, Germaine Pharmacy Inc., and ERX Consultants LLC dba Zoetic Pharmacy*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 25, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt.

/s/ *Gregory W. Kehoe*
Attorney

12