UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | 2:18–CR–140 |
|  | ) |  |
| PETER BOLOS | ) |  |

MEMORANDUM OPINION AND ORDER

Defendant Bolos and the United States have filed objections to two orders of the magistrate judge. For the reasons stated below, Defendant's Objection, [Doc. 418], is OVERRULED, and the United States' Objection, [Doc. 427], is OVERRULED in part and SUSTAINED in part.

## I. Standard of review

Both of the magistrate judge's orders ruled on non-dispositive motions. Therefore, the Court reviews "timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see* 18 U.S.C § 636(b)(1)(A). "If the magistrate judge's recommendation 'leaves the reviewing court with 'a definite and firm conviction that a mistake has been committed,' it is clearly erroneous or contrary to law." *United States v. Huddleston*, No. 3:16–CR–61, 2017 WL 3332757, at *2 (E.D. Tenn. Aug. 3, 2017) (quoting *Tri-Star Airlines, Inc. v. Willis Careen Corp. of L.A.*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999)).

## II. Objections

As already mentioned, two objections are before the Court regarding two separate orders. The Court will begin with Defendant's and then proceed to the United States' objection.

1

Case 2:18-cr-00140-JRG-CRW   Document 511   Filed 10/21/21   Page 1 of 15   PageID #: 6510

a. <u>Defendant's Objections to Magistrate Judge's Report and Recommendation (Doc. 404)</u>[1]

Defendant objects to the magistrate judge's order, [Doc. 404], permitting the testimony of Steve McCall. [Doc. 418]. The United States intends to call Mr. McCall as a fact witness and an expert witness. [Doc. 252-1, PageID 3650]. Steve McCall is an employee of CVS Caremark, an alleged victim in this case. [*Id.*]. Defendant previously filed a motion to exclude his testimony on the grounds that Mr. McCall couldn't give an opinion regarding Defendants' mental state, he couldn't make legal conclusions, and that his testimony would cause unfair prejudice and jury confusion. [Doc. 252]. In the background section of his motion to exclude relating to Mr. McCall, Defendant says that Mr. McCall has a "business interest in the outcome of this case" but does not elaborate on the point. [*Id.* at PageID 3636]. Defendant does not make any formal arguments regarding the business interest.

The magistrate judge granted Defendant's motion, in part. [Doc. 404, PageID 5570]. The order limits Mr. McCall's testimony but does not prohibit him from testifying as both a fact and expert witness. [*Id.* at PageID 5569–70]. In the order, the magistrate judge references the business-interest statement. The order says that Defendant "argue[s] that Mr. McCall has a business interest in the outcome of the case," but the order does not further address the business interest, presumably, because Defendant didn't say anything else about it either. [*See id.* at PageID 5558].

Now, Defendant objects on two grounds; first, that "the magistrate judge failed to factor in whether McCall's business interest in the PBM limits or precludes him from testifying as an expert witness," and second, that "the magistrate judge erred when she held that McCall can testify as

---

[1] Defendant's objection and the United States' response refer to the magistrate judge's order as a report and recommendation. Whether an order or report and recommendation, the result here is the same.

both a fact witness and an expert so long as his testimony is 'clearly defined as one or the other' without delineating other specific safeguards." [*Id.* at PageID 5738–40].

>  1. *Defendant waived any argument regarding Mr. McCall's business interest.*

Defendant argues that the magistrate judge erred by not ruling on his "argument" regarding the witness's "business interest in the outcome of this case . . . ." [Doc. 418, PageID 5738]. The United States filed a response to this objection and argues that the magistrate judge did not need to rule on this statement because Defendant did not actually make any argument. [Doc. 440, PageID 6102–03]. Defendant filed a reply to the United States' opposition saying that he did make an argument, and the magistrate judge recognized the statement as argument. [Doc. 463, PageID 6279–80].

Defendant waived this argument by failing raise it before the magistrate judge. A party waives an argument on appeal to the district court when the party did not raise it before the magistrate judge. *CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.,* No. CV 09-6623, 2011 WL 13202950, at *1 (E.D. La. Feb. 1, 2011) (quoting 14 Moore's Federal Practice § 72.11[1][a], at 72-51 (3d ed. 2010)). This waiver applies to any newly raised "arguments, case law, or evidentiary materials . . . . " *Id.* (quoting 14 Moore's Federal Practice § 72.11[1][a], at 72-51 (3d ed. 2010)); *see Murr v. United States*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) (citations omitted) (noting that the Magistrate Judge Act, 282 U.S.C. § 631, *et seq.*, "does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate" absent compelling reasons).

Here, Defendant raises a new argument, new case law, and relies on CVS Caremark's corporate records in an effort to exclude Mr. McCall based on his financial interests in the litigation. [Doc. 418, PageID 5739]. This objection is procedurally barred because Defendant did

3

not raise these arguments, case law, or information with the magistrate judge. Further, Defendant does not raise any compelling reasons to make an exception of the general rule requiring issues to first be raised with the magistrate judge. Defendant's one sentence mentioning Mr. McCall's business interest is not an argument, even if the magistrate judge referred to it as such. Defendant's argument, case law, and new evidence were not submitted to the magistrate judge for her review. Therefore, the argument, case law, and new evidence, are barred.

Additionally, in his objection, Defendant alternatively requests "an initial expert *voir dire*" to prove Mr. McCall's financial interest. [*Id.* at PageID 5740]. Defendant does not explain why an initial *voir dire* is necessary, and the Court does not see its necessity. Defendant will have the opportunity to cross-examine Mr. McCall, and cross-examination will be a sufficient opportunity for Defendant to explore Mr. McCall's financial interests. Therefore, Defendant's objection requesting the exclusion of Mr. McCall's testimony is OVERRULED.

>   2. *Defendant's request for safeguards regarding Mr. McCall's dual testimony is better addressed with Motions in Limine.*

Also, in his Objection, Defendant requests additional safeguards to ensure that the jury understands that Mr. McCall is testifying as a fact and expert witness. [Doc. 418, PageID 5740]. Defendant incorporated this argument into his responses to the Government's Motions *in Limine*. [Doc. 420, PageID 5771]. This issue is best addressed with the Motions *in Limine*, and the Court will overrule the objection here.

>   3. Conclusion

For the reasons stated above, Defendant's Objections to Magistrate Judge's Report and Recommendation (Doc. 404), [Doc. 418], are OVERRULED.

4

Case 2:18-cr-00140-JRG-CRW   Document 511   Filed 10/21/21   Page 4 of 15   PageID #: 6513

b. United States' Objection To Magistrate Judge's Order Restricting the Testimony of Dr. Stephen Thomas (Doc. 405)

The United States filed an Objection to Magistrate Judge's Order Restricting the Testimony of Dr. Stephen Thomas (Doc. 405). [Doc. 427]. The magistrate judge's order limited the testimony of Dr. Thomas and ruled that he could not opine about telemedicine or the doctor-patient relationship (also referred to as a practitioner-patient relationship). [Doc. 405, PageID 5584–85].

Originally, the United States designated Dr. Thomas as an expert to discuss:

- The practice of telemedicine generally as well as the appropriate prescribing practices within the telemedicine context for prescription of topical pain creams, headache medications, supplements, and other medications relevant to this case.
- The importance of evaluating patient history; conducting patient examinations; prescribing trial quantities of medication prior to deciding upon continuation of the prescribed medication; and conducting patient follow-up visits to evaluate the nature of patient response to treatment and the efficacy of prescribed medications.
- The risks and uncertainties of: prescribing too many medications (or too much medication) at once; prescribing pain medications in the absence of a valid doctor-patient relationship, the absence of a valid medical history, and/or the absence of a patient examination; and treating patient pain symptoms (e.g. headaches, back pain, etc.) without establishing a diagnosis and medical context for the treatment.
- The characteristics of the type of patient examination that, in the ordinary scope of medical practice, would be conducted prior to issuing prescriptions for the pain medications at issue in this case.
- The industry-accepted definition of a valid doctor-patient relationship within the telemedicine context and the information necessary for a prescribing telemedicine doctor to make a determination about the medical necessity of the medications prescribed in this case.
- The clinical efficacy of some of the medications at issue in this case.
- The similarities and differences between the expensive medications at issue in this case and other identical prescription medications or similar medications available over-the-counter at a fraction of the cost.

[Doc. 253-1, PageID 3742–43].

Defendant filed a Motion to Exclude Dr. Thomas's testimony on the grounds that he is not an expert on telemedicine and that his expertise regarding a "valid doctor-patient relationship" will not assist the jury. [Doc. 253, PageID 3730–31].

5

The United States responded in opposition, [Doc. 267], and the magistrate judge held a hearing on the matter, [Doc. 368]. After the hearing, the United States filed a supplement. [Doc. 376]. Among other arguments, the Government argues that "[t]he word 'telemedicine' does not arise in the context of Dr. Thomas' proposed *opinion* testimony . . . . " [*Id.* at PageID 4887 (emphasis in original)]. Defendant responded to the supplement. [Doc. 384].

The magistrate judge granted Defendant's motion, in part, and denied it, in part. [Doc. 405, PageID 5571]. The magistrate judge ruled that Dr. Thomas was not an expert on telemedicine standards and practices. [*Id.* at PageID 5580]. The magistrate judge also determined that any testimony from Dr. Thomas regarding a valid doctor-patient relationship would be irrelevant because he would be testifying regarding how a doctor should examine a patient while in-person. [*Id.* at PageID 5582]. The magistrate judge decided that "Dr. Thomas is not qualified to offer expert testimony regarding telemedicine, the sole type of medical practice at issue in this case, and is instead only qualified, at most, to render expert testimony regarding the *in-person* practice of medicine." [*Id.* (emphasis in original)]. The magistrate judge went on to say that:

> [w]hile the Court understands the United States' concern that a ruling on the relevancy of Dr. Thomas's testimony without first hearing the Government's other proof is premature, there has been no assertion that any in-person medical practices are at issue in this case. Absent such a foundation, the Court cannot find that Dr. Thomas's testimony regarding the general standards for doctor-patient relationships in an in-person medical setting, the only type of medical practice about which he is qualified to testify, will be helpful to the jury.

[Doc. 405, PageID 5583]. The magistrate judge ruled that Dr. Thomas was qualified to testify regarding the prescription medicines at issue in the case. [*Id.* at PageID 5584–85].

Now, the United States raises two objections. First, in sum, the United States argues that the magistrate judge's analysis regarding the reliability and relevancy of Dr. Thomas's testimony was overly focused on telemedicine. [Doc. 427, PageID 6005]. Second, United States posits that

the magistrate judge erred by finding that Dr. Thomas's was unreliable because he has not treated patients in seven years. [*Id.* at PageID 6011].

> 1. *The magistrate judge did not err in ruling that Dr. Thomas was unqualified to testify regarding telemedicine practices but erred in ruling on relevancy before trial.*

The magistrate judge correctly ruled that Dr. Thomas is not qualified to testify regarding telemedicine practices. Trial courts act as gatekeepers and determine if an expert's testimony is admissible. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The proponent of the expert testimony bears the burden of establishing "its admissibility by a preponderance of proof." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). To admit expert evidence, (1) an expert must be qualified, (2) the testimony must be reliable, and (3) the testimony must be relevant. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008); *see* Fed. R. Evid. 702.

   i.   Dr. Thomas's qualifications

The United States says that the magistrate judge's focus on telemedicine was improper. The United States takes the position that Dr. Thomas should be able to testify regarding "the general, industry-accepted standards for doctor-patient relationships, and whether the processes used to obtain prescriptions in this constituted the valid practice of medicine and valid doctor-patient relationships." [Doc. 427, PageID 6005–06].

The magistrate judge's delineation between telemedicine and in-person medicine regarding Dr. Thomas's qualifications was proper in some respects. An expert can be qualified based on his or her "knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Dr. Thomas openly acknowledged that he has not claiming to be an expert on telemedicine even though the United States originally designated him as an

7

expert on telemedicine. [Doc. 383, PageID 5268; Doc. 253-1, PageID 3742–43]. Further, nothing in Dr. Thomas's *curriculum vitae* shows that he is an expert on telemedicine or telemedicine practices. [Doc. 427-1]. While some of his testimony indicates that Dr. Thomas does have some knowledge of telemedicine, the magistrate judge did not make clear error in ruling that he is not an expert on it.

However, Dr. Thomas is qualified to speak about doctor-patient relationships, the information needed for a doctor to treat a patient, and the risks of prescribing pain medicine and topical creams without forming a doctor-patient relationship. Dr. Thomas is unquestionably an expert in these matters. Defendant does not appear to even oppose Dr. Thomas's expertise on medicine, generally, and focuses on Dr. Thomas's lack of experience in telemedicine. [Doc. 486, PageID 6417]. As acknowledged by the magistrate judge, Dr. Thomas is a graduate of Stanford medical school, a specialist in anesthesiology and pain management, he completed a residency and fellowship in those fields, has a medical license, has multiple certifications related to pain management, practiced in anesthesiology and pain management and treated patients for approximately 30 years, including his residency and fellowships. [Doc. 405, PageID 5575–76]. Additionally, the magistrate judge noted that he "has published articles and given lectures related to anesthesiology and pain medicine." [*Id.* at PageID 5576]. As discussed by the magistrate judge, Dr. Thomas's education, training, and knowledge qualify him to speak regarding doctor-patient relationships, the information needed for a doctor to treat a patient, and the risks of prescribing pain medicine and topical creams without forming a doctor-patient relationship. [*Id.* at PageID 5580].

8

Case 2:18-cr-00140-JRG-CRW   Document 511   Filed 10/21/21   Page 8 of 15   PageID #: 6517

ii.  Reliability of Dr. Thomas's Proposed Testimony

The magistrate judge also ruled that Dr. Thomas's proposed testimony would be unreliable because he was not an expert on telemedicine. [Doc. 405, PageID 5579]. The United States objects, states that his testimony would be reliable, and then discusses Dr. Thomas's qualifications to testify. [Doc. 427, PageID 6008].

Reliability goes to an expert's reasoning. *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (6th Cir. 2014). A court looks to the underlying expert's reasoning and methodology to decide if testimony is scientifically valid and reliable. *Id.* The Supreme Court has provided a non-exclusive list of factors that speak to the reliability of expert testimony:

> (1) whether the theory or technique can be or has been tested;
> (2) whether it 'has been subjected to peer review and publication';
> (3) whether there is a 'known or potential rate of error'; and
> (4) whether the theory or technique enjoys general acceptance in the relevant scientific community.

*Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (quoting *Daubert*, 509 U.S. at 593-94). The *Daubert* factors "are not dispositive in every case" and should be applied "only where there are reasonable measures of reliability of expert testimony." *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001).

However, when an expert is testifying about non-scientific evidence, the line between an expert's qualifications and the reliability of the expert's testimony becomes blurred. The Sixth Circuit has applied a broad interpretation of Rule 702 and said, "[T]he fact that [an expert's] opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not render them unreliable and inadmissible." *Vinel v. Union Twp., Ohio*, No. 1:16–CV–930, 2018 WL 7080037, at *6–7 (S.D. Ohio Apr. 13, 2018) (quoting *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (internal

9

citations omitted)). If the *Daubert* factors applied to all testimony "outside the scientific realm, many types of relevant and reliable expert testimony—that derived substantially from practical experience—would be excluded." *Id.* Sometimes, the *Daubert* factors apply to non-scientific evidence "while in other cases 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). That being said, nonscientific evidence does not get a free pass. The expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, advisory committee note, 2000 amend.

Dr. Thomas's testimony, absent any discussion of telemedicine practices, is reliable. Dr. Thomas's experience was discussed above, and this experience eliminates most reliability concerns for non-scientific expert testimony. Any doubt about his reliability is eliminated based on how Dr. Thomas will gather information about this case and an example of how he applied his knowledge to the facts of this case.

The United States said that his "opinion testimony will be based on facts and data (including, without limitation, evidence in this case such as prescriptions, health information files, audio recordings, claims data, witness statements, and other records) made available to Dr. Thomas as well as upon hypothetical questions posed to Dr. Thomas and/or testimony of other witnesses observed by Dr. Thomas." [Doc. 253-1, PageID 3743]. And the United States expects Dr. Thomas to, among other things, to give any opinion about "many risks associated with the prescribing practices at issue in this case . . . . " [*Id.*]. At a hearing with the magistrate judge, Dr. Thomas described basic prescribing practices in the pain-management specialty. [Doc. 383, PageID 5175].

10

For example, he described how the "the follow-up process, particularly in pain medicine, is absolutely necessary given that many, if not most, pain drugs tend to be both fraught with side effect and likely to be ineffective, particularly in the treatment of chronic pain." [*Id.*]. Considering Dr. Thomas is expected to listen to testimony of other witnesses, his testimony shows that he will be able to identify, based on his experience and expertise, "risks associated with the prescribing practices at issue in this case," and give an opinion about that practice.

The magistrate judge ruled that his testimony would be unreliable because Dr. Thomas does not have experience in telemedicine. And the magistrate judge does have a point because the United States originally designated him as an expert in telemedicine before stating that Dr. Thomas can testify without discussing telemedicine. [Doc. 405, PageID 5578]. The magistrate judge is correct that Dr. Thomas is not qualified to discuss telemedicine, but he is qualified to discuss the medical specialty of pain management and can give reliable testimony on that subject.

Dr. Thomas's testimony regarding the normal prescription practices in the field of pain management and the formation of doctor-patient relationships in pain management is reliable. His background and expertise, under Rule 702, makes Dr. Thomas an "expert by knowledge, skill, experience, training, or education[,]" and he "may testify in the form of an opinion."

Looking to the subjects on which the United States sought to qualify Dr. Thomas and with striking the word "telemedicine" from the list, his expert testimony is reliable under Supreme Court and Sixth Circuit precedent. Dr. Thomas's experience as a pain management physician is extensive, and he actively prescribed the types of medications at issue in this case. Therefore, the Court will qualify Dr. Thomas to testify and rule that his testimony is reliable regarding:

1. [T]he appropriate prescribing practices . . . for prescription of topical pain creams, headache medications, supplements, and other medications relevant to this case.

11

Case 2:18-cr-00140-JRG-CRW   Document 511   Filed 10/21/21   Page 11 of 15   PageID #: 6520

>    2. The characteristics of the type of patient examination that, in the ordinary scope of medical practice, would be conducted prior to issuing prescriptions for the pain medications at issue in this case.
>
>    3. The industry-accepted definition of a valid doctor-patient relationship . . . and the information necessary for a prescribing . . . doctor to make a determination about the medical necessity of the medications prescribed in this case.

### iii. Relevancy of Dr. Thomas's testimony cannot be determined until trial.

After deciding that Dr. Thomas could not testify regarding telemedicine, the magistrate judge similarly ruled that Dr. Thomas's testimony was irrelevant because, while he may be able to testify about in-patient practices, he could not speak to telemedicine practices, which are the only practices in this case. [Doc. 405, PageID 5582]. The magistrate judge decided that ruling on relevancy before trial was appropriate because there were no "in-person medical practices at issue in the case." [*Id.* at PageID 5583].

The United States objects, arguing that Dr. Thomas's testimony is relevant or, in the alternative, that relevance should not be ruled on until trial. [Doc. 427, PageID 6008–09]. Defendant argues that Dr. Thomas's testimony regarding doctor-patient relationships is irrelevant. [Doc. 486, PageID 6421].

Here, the magistrate judge erred in deciding the relevancy issue before trial. This Court absolutely sees the magistrate judge's point and very well may rule the same way at trial. While the Court sees distinctions between telemedicine and traditional medical practice, Dr. Thomas's expertise in pain management and forming doctor-patient relationships in the pain management field may be relevant regardless of the practice setting. In carrying over the above example, the necessity of a follow-up process, in general, does not imply that a follow-up process is required to be in-person.

With the proper foundation, his testimony may be relevant, so ruling on the relevancy of the testimony was premature and clearly erroneous. In making this ruling, the Court will specifically point out that Defendants' trial will not become a trial on the efficacy of telemedicine in the pain management specialty, and the Court will not allow testimony that could confuse a jury and have it believe that the case turns on whether a patient had an in-person visit.

The Court notes that Defendant makes numerous arguments regarding the irrelevancy of Dr. Thomas's testimony. These arguments will be better addressed at trial.

Therefore, the section of the magistrate judge's order ruling that Dr. Thomas's testimony was irrelevant was clearly erroneous.

> 2. *Objection to the magistrate judge's consideration of Dr. Thomas's lapse from treating patients.*

When discussing Dr. Thomas's reliability as an expert, the magistrate judge's order said, "Dr. Thomas has not treated patients at all in seven years, nor has he participated in any activity that could be called the practice of medicine during that time." [Doc. 405, PageID 5579]. The order goes on to say, "The landscape for medical services has changed dramatically since Dr. Thomas ceased actively practicing medicine, and the Court is hesitant to declare Dr. Thomas reliable expert in the prescribing of medications because he has not been called upon to perform this function in several years." [*Id.* at PageID 5579]. The United States objects to this language and argues that Dr. Thomas is reliable.

Above, the Court ruled that Dr. Thomas qualified as an expert and deemed his testimony reliable. The Court sees no reason to address these sentences in the discussion section of the magistrate judge's order when this Court already ruled in the United States' favor. Therefore, this objection is overruled.

### 3. Conclusion

In conclusion, the United States' Objection is SUSTAINED, in part, and OVERRULED, in part. Dr. Thomas is qualified as an expert, and his expert testimony is reliable regarding:

1. [T]he appropriate prescribing practices . . . for prescription of topical pain creams, headache medications, supplements, and other medications relevant to this case.

2. The characteristics of the type of patient examination that, in the ordinary scope of medical practice, would be conducted prior to issuing prescriptions for the pain medications at issue in this case.

3. The industry-accepted definition of a valid doctor-patient relationship . . . and the information necessary for a prescribing . . . doctor to make a determination about the medical necessity of the medications prescribed in this case.

Further, the magistrate judge's finding that Dr. Thomas is not qualified to testify regarding telemedicine is not clearly erroneous. To the extent that the magistrate judge's order can be construed as finding that Dr. Thomas is not qualified to testify or that his testimony regarding prescribing practices of pain medications, the ordinary scope of examinations before prescribing pain medications, the industry-accepted definition of a valid doctor-patient relationship, and the information necessary for prescribing pain medication would be unreliable was clearly erroneous, the order is VACATED. The Court will rule on the relevancy of Dr. Thomas's testimony at trial, and the United States is ORDERED to provide the Court and opposing counsel with at least a 48–hour notice before proposing to call Dr. Thomas as a witness.

### III. Conclusion

For the reasons stated above, Defendant's Objection, [Doc. 418], is OVERRULED, and the United States' Objection, [Doc. 427], is OVERRULED in part and SUSTAINED in part.

So ordered.

ENTER:

                                                s/J. RONNIE GREER
                                         UNITED STATES DISTRICT JUDGE