UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-140 |
| | ) | District Judge Greer |
| PETER BOLOS | ) | |

**UNITED STATES' MOTION FOR FORFEITURE AND MONEY JUDGMENT**

Comes now the United States of America, by and through the United States Attorney for the Eastern District of Tennessee and submits the below request for forfeiture and money judgment to this Court.

**NOTICE**

The United States does not presently intend to call any witnesses for the forfeiture hearing scheduled for February 8, 2022. For the purpose of proving forfeiture, the United States will rely on proof described in this brief and, as necessary, on other evidence admitted at trial and through earlier affidavits and sworn documents filed with the Court.

**BACKGROUND**

On October 9, 2018, a grand jury returned an indictment charging the defendant, Peter Bolos, with one count of conspiracy to commit health care fraud, 22 counts of mail fraud, and one count of felony misbranding. [Doc. 1, the "Indictment".] The Indictment included a forfeiture allegation pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. (*Id.* at 38-39.) The forfeiture allegations specifically charged "[a] personal money judgment in favor of the United States and against . . . defendant PETER BOLOS in the amount of $3,203,414 . . . which

1

represent[s] the amount of proceeds [the] defendant[] personally obtained from the offenses(s) described above." [*Id.* at 39.]

The next day, October 10, 2018, the United States presented to the magistrate an affidavit in support of a warrant to seize the contents of numerous bank accounts, including two bank accounts at JPMorgan Chase Bank (accounts *2260 and *9886) and one at Bank of America (account *6500), under the control of the defendant or the joint control of the defendant and his former spouse, as well as a bank account at JPMorgan Chase Bank belonging to Synergy Pharmacy Services Inc. (account *8172) under the joint control of the defendant, Andrew Assad, and Michael Palso. [2:18-mj-00238-MCLC, Doc. 4.] This affidavit was sworn by FDA-OCI Special Agent Brian Kriplean, who also served as the government's representative during trial per FRE 615(b). The magistrate authorized the warrant on October 10, 2018, and it was executed shortly thereafter. [2:18-mj-00238-MCLC, Doc. 5, the "Warrant".]

On February 1, 2019, the United States filed a bill of particulars [Doc. 94] seeking specific items to be forfeited, including the contents of certain bank accounts belonging to the defendant seized as part of the Warrant: (1) $1,048.76 seized on October 12, 2018 from JPMorgan Chase Bank account ending *9886, in the names of Peter Bolos or Nermine Bolos; (2) $1,000.80 seized on October 12, 2018 from JPMorgan Chase Bank account ending *2260 in the names of Peter Bolos or Nermine Bolos; (3) $877.10 seized on October 12, 2018 from Bank of America account ending *6500 in the name of Peter Bolos ITF The Peter Rifat Bolos Trust; and (4) $4.77 U.S. currency seized on October 12, 2018, from JPMorgan Chase Bank, account ending *8172, in the name of Synergy Pharmacy Services.

On December 1, 2020, a grand jury returned a first superseding indictment charging the defendant with the same offenses. [Doc. 278, the "First Superseding Indictment".] The First Superseding Indictment contained the same forfeiture allegations set forth in the Indictment.

On December 2, 2021, following a 21-day trial, the defendant, Peter Bolos, was convicted on all counts in the Superseding Indictment. Given the overwhelming evidence of guilt, the jury required fewer than five hours to reach its verdict.

During the trial, the United States admitted numerous exhibits, including the monthly JPMorgan bank account statements for September 2015 through February 2018 for Synergy Pharmacy's primary operating account ending in *8172.[1] [Doc. 665 at 1-2, Exhibits Log.]

## ARGUMENT

The United States bears the burden of proving a forfeiture money judgment by a preponderance of evidence. *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992) (forfeiture is part of sentencing, which is governed by the preponderance standard; same standard applies to forfeiture of proceeds and facilitating property); *see also United States v. Layne*, 192 F.3d 556, 575 (6th Cir. 1999) (reaffirming *Smith*); *United States v. Warshak*, 631 F.3d 266, 331 (6th Cir. 2010). The government may satisfy its burden of proof as to the amount of the money judgment with circumstantial evidence and the calculation does not require "mathematical exactitude." *See United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011); *United States v. Bourne*, 2012 WL 526721 (E.D.N.Y. Feb. 15, 2012) (Government has the burden of establishing the amount of the money judgment by a preponderance of the evidence; the calculation need not be exact).

---

[1] These monthly bank records were marked as exhibits 13-i through 13-u, 13-y, 13-z, 13-aa through 13-kk, and 13-oo through 13-rr.

3

As alleged in the Indictment and First Superseding Indictment, and as proven by the affidavit sworn by FDA-OCI Special Agent Brian Kriplean and evidence admitted at trial, the defendant personally obtained at least $3,203,414 from the offenses for which he was convicted. In sum, the First Superseding Indictment alleges, and the affidavit and trial evidence proved, that the defendant was an integral part of a conspiracy to defraud pharmacy benefit managers ("PBMs"). The defendant's fraud succeeded. From September 15, 2015 through at least February 28, 2018, the PBMs paid approximately $80,000,000 to account *8172 at JPMorgan Chase, controlled by the defendant, Andrew Assad and Michael Palso.

Section I below summarizes a minute portion of the overwhelming evidence proving that the approximately $80,000,000 deposited into account *8172 were proceeds from criminal activity.

Section II below proves how the proceeds from criminal activity deposited into account *8172 were transferred during the conspiracy into accounts directly in the defendant's control, in particular into accounts *9886, *2260, and *6500.

**I. From September 2015 through February 2018, at Least 80% of Funds Deposited into Account *8172 were Proceeds from Criminal Activity**

At trial, the monthly bank statements for September 2015 through February 2018 for account *8172 were authenticated and admitted through Andrew Assad. Mr. Assad testified, and the admitted exhibits confirmed, that: (a) more than $100,000,000 was deposited into account *8172 during the conspiracy; (b) all or substantially all that amount constituted payments from the PBMs for prescriptions billed by Synergy; and (c) 80%, or approximately $80,000,000, of that amount constituted payments from the PBMs in respect of HealthRight prescriptions.

Pamela Guertin corroborated Assad's testimony that 80% of Synergy's business came from HealthRight prescriptions. [Doc. 630, 11/5/2021 Tr. of Pamela Guertin, 17:16 ("I would

4

say roughly 80%.")] The defendant himself testified that tens of millions of dollars were deposited into account *8172 from billed prescriptions. Scott Roix, Derek Thibeau, Brandon Behman, and Pamela Guertin all testified that the defendant bought these prescriptions from Roix for $500 apiece. [*See e.g.* Doc. 630, 11/5/2021 Tr. of Pamela Guertin, 43:15-19 ("Peter Bolos explained to me what Synergy was going to pay per patient to HealthRight, and there was also a guarantee or estimation of volume from HealthRight . . . at $500 a patient".)] Numerous items of evidence admitted at trial proved that the PBMs considered it material that: the defendant bought the prescriptions from HealthRight [Doc. 624, 11/16/2021 Tr. of Blake Stockwell at 55:15-23, 56:1-10 ("Again, buying prescriptions is inappropriate no matter the payment structure.")]; the prescriptions were billed and dispensed absent a valid doctor-patient relationship [*id.* at 62:15-17 ("If we [ESI] found out that there was not a valid patient-prescriber relationship, the pharmacy would not be entitled to reimbursement.")]; the defendant intentionally failed to collect corresponding patient copays and laundered money to fund patient copays using Synergy's money [*id.* at 75:13-15 ("That would be significantly concerning to us. Similarly those claims would be subject to recoupment, and a pharmacy would be terminated if that was identified."]; and in many cases the prescriptions were dispensed into states where the defendant had obtained a pharmacy licenses fraudulently [*id.* at 82:12-18]. Steve McCall of CVS Caremark provided similar testimony.

     Suffice it to say, the evidence at trial proved beyond a reasonable doubt that approximately $80,000,000 of the approximately $100,000,000 deposited into account *8172 was proceeds of criminal activity.

## II. Some of the Proceeds of Criminal Activity Deposited into Account *8172 Were Transferred to Accounts *6500, *2260, and *9886 in the Defendant's Control

As alleged in the forfeiture allegation in the First Superseding Indictment, at least $3,203,414 of that approximately $80,000,000 in criminal proceeds deposited into account *8172 was transferred during the conspiracy into three accounts controlled personally or jointly by the defendant. In particular, as set forth in the Declaration of Special Agent Brian Kriplean dated as of February 2, 2022 (attached as Exhibit 1), Special Agent Kriplean determined that $2,349,000 was transferred directly from account *8172 to account *9886 in the name of Peter Bolos or Nermine Bolos, that $200,000 was transferred directly from account *8172 to account *2260 in the name of Peter Bolos or Nermine Bolos, and that $680,795.83 was transferred directly from account *8172 to account *6500 in the name of Peter Bolos ITF The Peter Rifat Bolos Trust, as depicted in the following diagram. [Declaration at 2.]



This amount totaled $3,229,795.83, which was transferred during the conspiracy. [*Id.* at 1.] This amount also exceeds the money judgment alleged in the First Superseding Indictment sought pursuant to this motion. The Court should forfeit the full amount of $3,229,795.83, even though it exceeds the alleged money judgment of $3,203,414. *See United States v. Segal*, 495 F.3d 826, 839-40 (7th Cir. 2007) (because the forfeiture notice used terms like "at least" and

"including but not limited to" in describing the proceeds subject to forfeiture, the indictment did not limit the forfeiture to any specific figure or assets); *United States v. Ponzo,* 853 F.3d 558, 589 (1st Cir. 2017) (in light of the "including but not limited to" language in the indictment and the precedents on this issue, it was not plain error for the district court to order forfeiture of more than the amount set forth in the indictment).

Even though approximately $3,229,795.83 in criminal proceeds was traced directly to accounts controlled by the defendant, the United States was only able to seize $2,926.66 from those three accounts. In short, the defendant was able to move criminal proceeds out of these accounts before the proceeds could be seized.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court issue an order that the defendant has forfeited his interest in:

- $1,048.76 seized on October 12, 2018 from JPMorgan Chase Bank account ending *9886, in the names of Peter Bolos or Nermine Bolos;

- $1,000.80 seized on October 12, 2018 from JPMorgan Chase Bank account ending *2260 in the names of Peter Bolos or Nermine Bolos;

- $877.10 seized on October 12, 2018 from Bank of America account ending *6500 in the name of Peter Bolos ITF The Peter Rifat Bolos Trust; and

- $4.77 U.S. currency seized on October 12, 2018, from JPMorgan Chase Bank, account number *8172, in the name of Synergy Pharmacy Services,

as set forth in the Bill of Particulars. [Doc. 94.]

The United States also requests that the Court Order a money judgment be entered against the defendant Peter Rifat Bolos in the amount of $3,229,795.83.

\* \* \* \* \*

Respectfully submitted this the 3rd day of February 2022,

>FRANCIS M. HAMILTON III
>UNITED STATES ATTORNEY
>
>By: */s/ Timothy C. Harker*
>Timothy C. Harker, NY Bar# 4582177
>Assistant United States Attorney
>800 Market Street, Suite 211
>Knoxville, TN 37902
>(865) 545-4167
>Email: timothy.harker@usdoj.gov
>
>By: */s/ Mac D. Heavener III*
>Mac D. Heavener III (FL Bar #0896748)
>Assistant United States Attorney
>220 West Depot Street, Suite 423
>Greeneville, TN 37743
>(423) 639-6759
>Email: mac.heavener@usdoj.gov
>
>By: *s/ David L. Gunn*
>David L. Gunn, DC Bar #488761
>Senior Trial Attorney, Department of Justice
>Consumer Protection Branch
>450 5th Street, NW
>Washington, DC 20001
>(202) 532-4882
>Email: David.L.Gunn@usdoj.gov
>
>*s/Gretchen Mohr*
>GRETCHEN MOHR, NY Bar#5064704
>Assistant United States Attorney
>800 Market Street, Suite 211
>Knoxville TN 37902
>(865) 225-1695
>Gretchen.Mohr@usdoj.gov